**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 14, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANTONIO VALDEZ, also known as
Tony Valdez,

Defendant - Appellant.

No. 06-1339

D. Colo.

(D.C. No. 04-cr-343-EWN)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Antonio Valdez was sentenced to 215 months imprisonment, well below the

advisory guideline range of 360 months, after pleading guilty to two counts of

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

conspiracy to import and distribute a controlled substance. Though he never moved to withdraw his plea, he now contends it was unknowing, unintelligent and lacked a factual basis. He also claims his below-guideline sentence is unreasonable and his conviction is invalid. Despite his broad and creative pro se lawyering,[1] we reject all of Valdez's alleged errors and affirm.

## I. BACKGROUND

Valdez was indicted, along with thirteen others, for conspiracy to import ecstasy into the United States(Count I) and conspiracy to possess with intent to distribute and to distribute ecstasy (Count II).[2] Valdez entered into a plea agreement, in which he agreed to plead guilty to both counts and cooperate with the government. In exchange, the government agreed to withdraw its notice of sentencing enhancement and recommend a "substantial assistance" reduction of at least 25% off the lowest end of the applicable guideline range. Valdez retained the right to request a below guideline sentence.

In the plea agreement, the parties stipulated to the following: From 1998 to 2003 Valdez and his co-defendants were involved in a conspiracy to import

[1] Valdez was originally represented by counsel on appeal. After the briefing was completed, Valdez filed a motion to proceed pro se and, at Valdez's request, his counsel filed a motion to withdraw. We granted both motions and permitted Valdez to file a supplemental brief, which we liberally construe on account of Valdez's pro se status. *See Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998).

[2] Ecstasy is the common name for 3,4-methylenedioxymethamphetamine or MDMA.

ecstasy from Europe into the United States and distribute the ecstasy within the United States.[3]  During this period, at least twenty-six smuggling trips were documented.  The quantity of ecstasy imported was "conservatively estimated at in excess" of 1,500,000 pills.  (R. Vol. I, Doc. 511 at 4.)  Valdez was an organizer of the conspiracy and was responsible for recruiting couriers and distributing the ecstacy in the United States.  On at least one occasion, co-defendant Kenneth Fife, a Colorado resident, purchased ecstasy from Valdez outside of Colorado for distribution in Colorado.  The proceeds from Fife's drug sales were deposited in a Colorado bank account.

The parties stipulated to a base offense level of 38, based on the quantity of ecstasy involved, and a 4-level enhancement for Valdez's leadership role under USSG §3B1.1(a).  Applying a 3-level downward adjustment for acceptance of responsibility under USSG §3E1.1(b), the parties estimated Valdez's total offense level would be 39.  The parties anticipated Valdez would be in Criminal History Category III or IV.  Based on these calculations, the parties predicted a sentence guideline range of 324 to 405 months imprisonment or 360 months to life imprisonment, though the sentence would be statutorily capped at 20 years on each count.

---

[3]  Though not clear from the stipulated facts, it appears there were two separate conspiracies.  The first conspiracy – the importation conspiracy – ended in 2000.  The second conspiracy – the distribution conspiracy – ended in December 2003.

On April 27, 2005, the court held a change of plea hearing. Consistent with the plea agreement, the court advised Valdez his applicable guideline range would be either 324 to 405 months or 360 months to life imprisonment. It informed him that, notwithstanding the guideline range, the statutory maximum was 20 years on each count, which could be combined for a total of 40 years. After thorough questioning, the court asked Valdez: "In short, by pleading guilty, you are admitting your guilt to these offenses, the elements of these offenses, and your intent to commit the offenses." Valdez responded: "Yes, sir." (R. Vol. IV at 21-22.) The court accepted Valdez's guilty plea after assuring itself the plea was freely and voluntarily entered.

Following the change of plea hearing, Valdez filed a motion for a non-guideline sentence of between 51 and 63 months. As promised in the plea agreement, the government filed a motion for a 3-level downward adjustment for acceptance of responsibility pursuant to USSG §3E1.1(b) and for a 25% downward departure under USSG §5K1.1.

Sentencing was first scheduled for January 27, 2006. On January 26, Valdez filed an ex parte submission. On the 27th, the court expressed concern regarding the presentence report and sentencing was continued to March 24, 2006. On March 24, Valdez filed a second ex parte submission. The court expressed concern that Valdez appeared to be "denying his guilt" in his two ex parte filings. (R. Vol. III at 4.) Because Valdez's counsel was not aware of the latter

submission, the court again continued the hearing.

On April 14, Valdez again appeared for sentencing. The court discussed Valdez's ex parte submissions, which it described as attempts to "weasel" out of the plea. (R. Vol. VI at 2.) The court asked defense counsel what Valdez wanted to do. She replied: "I don't believe after conferring with him at length . . . that he in any way intends to obstruct this process, withdraw his plea, or deny acceptance of responsibility." (*Id.* at 4.) The court then asked Valdez directly: "Mr. Valdez, what do you want to do?" Valdez responded: "I want to plead guilty, sir. I'm very sorry --." (*Id.*) He continued:

> I am pleading guilty, sir, as I did at my change of plea. .
> . . I was just trying to make the Court aware of the
> differences that I have, not that I'm not guilty. I
> imported and distributed more ecstasy than the average
> person would be able to see in a lifetime from the year
> 1998 to 2000. And I'm very, very sorry.

(*Id.*) Valdez clearly admitted to his guilt and wanted the benefit of the plea agreement. The court denied the government's motion to strike Valdez's ex parte submissions, but determined he was not attempting to withdraw his plea. Valdez did not object.

The court then discussed whether to apply the 2000 or the 2005 version of the guidelines. The guidelines were amended in May 2001 to increase the penalties associated with ecstasy. Under the 2000 version of the guidelines, one gram of ecstasy is equivalent to 35 grams of marijuana. *See* USSG §2D1.1,

comment. (n.10) (Nov. 2000). Under the 2005 version (the relevant portion of which was not amended between 2001 and 2005), one gram of ecstasy is equivalent to 500 grams of marijuana. *See* USSG §2D1.1, comment. (n.10) (Nov. 2005). If calculated under the 2000 version, the guideline range for Count I for a defendant in Criminal History Category IV would be 235 to 293 months. If calculated under the 2005 version, the guideline range would be 360 months to life imprisonment.

The court determined the 2005 version applied because the second conspiracy extended through December 2003. *See* USSG §1B1.11(b)(3) (Nov. 2005) ("If the defendant is convicted of two offenses, the first committed before and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses."); USSG §1B1.11, comment. (n.2) ("Because the defendant completed the second offense after the amendment to the guidelines took effect, the *ex post facto* clause does not prevent determining the sentence for that count based on the amended guidelines."). However, the court acknowledged "the seriousness of the offense really was centered in 2000" or earlier. (R. Vol. VI at 17.) Thus, it calculated what the sentence would be for Count I under the 2000 version with the government's requested 25% downward departure. The calculated figure was between fourteen and fifteen years and the court stated its intention to sentence Valdez to 168 months (fourteen years) on Count I. It then calculated a much

higher guideline range using the 2005 version but said the sentence it imposed, though below that range, was sufficient to achieve the statutory purposes of sentencing.

The court thus sentenced Valdez to 168 months imprisonment on Count I and 48 months on Count II, to be served consecutively, explaining "the non-Guideline term . . . is appropriate to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." (R. Vol. VI at 20-21.) The court stated it had "considered the nature and circumstances of the offense and the history and the characteristics of the defendant" and the term imposed "is sufficient to achieve the statutory purposes of a sentence of incarceration." (*Id.* at 20.)

The court rejected Valdez's request that the sentencing disparity between him and his co-defendants be reduced. It explained: "[I]t's the appropriate sentence, I think, because Mr. Valdez is not Robelen and he's not any of the [other] codefendants. He was the center of all of this. And his situation is simply different from the other defendants. And most significantly, his criminal history is significantly different from the other codefendants." (R. Vol. VI at 18.) In a written order, the court further explained: "Defendant's criminal record, his central role in this criminal activity, and the lukewarm, expedient, and self-serving nature of his cooperation all distinguish him from others who received lighter sentences." (R. Vol. I, Doc. 773 at 4.)

## II. DISCUSSION

Although he made no mention of it before the district court, Valdez now seeks for his guilty plea to be withdrawn and his conviction reversed based on the government's untimely disclosure of allegedly exculpatory impeachment information, lack of venue and lack of factual basis for the plea. He also contends his sentence is unreasonable.

### A. Impeachment Information

Valdez contends his plea was unknowing and unintelligent because, prior to the change of plea hearing, the government failed to disclose certain allegedly exculpatory impeachment information. However, as the government points out, Valdez received this information prior to sentencing and did not move to withdraw his plea. *See* Fed. R. Crim. P. 11(d)(2) (Allowing a plea to be withdrawn before sentencing for a "fair and just reason."). Thus, his argument that "[h]ad [he] had access to the Fife statements prior to plea . . . [they] would have affected the decision to plead to the indictment" strains credibility. (Appellant's Supp. Opening Br. at 19.) Moreover, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002).

### B. Venue

Valdez contends his plea was unknowing and unintelligent because the

court failed to rule on his motion to dismiss for lack of venue prior to the change of plea hearing.[4] He also argues his conviction is invalid because charges pending against a co-defendant were dismissed for lack of venue after the change of plea hearing and because the government intentionally misrepresented facts to the grand jury to obtain venue in Colorado. He is wrong.

In *United States v. Allen*, we rejected a similar challenge. 24 F.3d 1180 (10th Cir. 1994). There, a defendant who had plead guilty "contend[ed] that because the statutes are unconstitutionally vague when applied to his conduct as he characterizes it, the court had no jurisdiction." *Id.* at 1183. We rejected this argument, noting "Allen cannot prove this claim without contradicting the admissions in his guilty plea, namely that he committed the conduct alleged in the indictment *and* that in so doing he committed the crime charged." *Id.* We explained: "Allen's claim is foreclosed by his guilty plea . . . ." *Id.* We noted: "The Supreme Court has made clear that '[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a

---

[4] Valdez now contends he "challenged jurisdiction and venue prior to plea . . . ." (Appellant's Supp. Opening Br. at 20.) However, the motion he filed in the district court was a motion to dismiss for lack of venue and did not address jurisdiction. Venue is not jurisdictional and, unlike jurisdiction, can be waived. *See Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-68 (1939) ("The jurisdiction of the federal courts -- their power to adjudicate -- is a grant of authority to them by Congress and thus beyond the scope of litigants to confer. But the locality of a law suit -- the place where judicial authority may be exercised -- though defined by legislation relates to the convenience of litigants and as such is subject to their disposition.").

binding, final judgment of guilt and a lawful sentence.' Thus a defendant who makes a counseled and voluntary guilty plea admits both the acts described in the indictment and the legal consequences of those acts." *Id.* (quoting *United States v. Broce*, 488 U.S. 563, 569 (1989)).

Like *Allen*, Valdez's argument that his plea should be withdrawn and his conviction overturned for lack of venue is foreclosed by his guilty plea. Improper venue does not deprive a court of subject matter jurisdiction and Valdez waived any objection to venue by pleading guilty. *See United States v. Flynn*, 309 F.3d 736, 739 (10th Cir. 2002) ("By entering a voluntary plea of guilty, [the defendant] waived all non-jurisdictional defenses."); *United States v. Calderon*, 243 F.3d 587, 589 (2d Cir. 2001) (collecting cases explaining venue is not jurisdictional and is waived by a valid plea).[5]

C. Factual Basis for the Plea

Valdez claims the court erred in accepting his guilty plea because he filed two ex parte written submissions which called into question the factual basis for his plea. Valdez relies on *North Carolina v. Alford*, 400 U.S. 25 (1970), but that case is inapposite as it dealt with a guilty plea accompanied by protestations of

---

[5] Moreover, the court specifically rejected Valdez's challenge to venue at sentencing, stating: "And I've reviewed the transcript of that hearing. My finding for the lack of venue in this district as to those two defendants have nothing to do with Mr. Valdez. First, whenever any defendant pleads guilty, he waives the right to raise venue objections. Second, even if he hadn't waived the venue objections, Mr. Valdez was in this case up to his neck in both conspiracies. So that's just phony." (R. Vol. VI at 3.)

innocence. *See United States v. Buonocore*, 416 F.3d 1124, 1129-30 (10th Cir.

2005). Valdez never claimed innocence, but repeatedly admitted his guilt.[6]

The Federal Rules of Criminal Procedure require that "[b]efore entering

judgment on a guilty plea, the court must determine that there is a factual basis

for the plea." Fed. R. Crim. P. 11(b)(3). In the context of accepting a guilty plea,

the factual basis requirement "is a lower standard than the 'beyond a reasonable

doubt' standard required to satisfy the due process requirements of a criminal

trial." *United States v. Gallardo-Mendez*, 150 F.3d 1240, 1245 (10th Cir. 1998).

"We will not reverse a district court's determination as to the existence of facts

supporting a guilty plea unless that determination is clearly erroneous. Such a

determination is clearly erroneous only if it is without factual support or if we are

definitely and firmly convinced that a mistake has been made." *United States v.*

*Moran*, 452 F.3d 1167, 1171-72 (10th Cir. 2006) (citation omitted). Here,

Valdez's guilty plea was not without factual support and we are convinced no

mistake was made.[7] Valdez admitted his involvement in both the importation and

---

[6] Valdez cannot have his cake and eat it too – he cannot benefit from the favorable provisions of the plea agreement while at the same time contesting the facts he stipulated to therein.

[7] Valdez's unsworn statements contradicted some of the facts he stipulated to in the plea agreement, but the court was entitled to disregard these statements because Valdez admitted his guilt at sentencing and reiterated his desire to plead guilty. On appeal, he again seeks to challenge the factual basis for his plea; however, a defendant's stipulation waives any challenge contrary to the stipulation. *See United States v. Newman*, 148 F.3d 871, 878 (7th Cir. 1998).

distribution conspiracies and, by his own statements and through counsel, he repeatedly admitted his guilt and expressed a desire to plead guilty.

D. The Sentence

Valdez argues his sentence is substantively unreasonable because the court did not adequately consider the cessation of his criminal activity before his arrest which, he contends, lends diminished importance to the statutory factors of deterrence and rehabilitation. He also contends the court overvalued his criminal history, suggesting he should have been treated "as akin to the typical person in Criminal History Category II." (Appellant's Opening Br. at 23.) He further claims the court should have reduced the disparity between his sentence and the sentences of his co-defendants and argues the court erred in ascribing to him a leadership role with respect to the second conspiracy.

We review sentences for reasonableness, guided by the factors set forth in 18 U.S.C. § 3553(a). *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). Reasonableness has both a procedural component, encompassing the method by which the sentence was calculated, as well as a substantive component, which relates to the length of the sentence. *Id.* at 1055; *see also United States v. Gall*, __ U.S. __ , 128 S. Ct. 586, 597 (2007). We "review all sentences - whether inside, just outside, or significantly outside the Guidelines range -- under a deferential abuse-of-discretion standard." *Gall*, 128 S. Ct. at 591; *see also Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) ("appellate 'reasonableness' review

merely asks whether the trial court abused its discretion").

We find no abuse of discretion here. Valdez concedes the court correctly calculated his criminal history. Moreover, he acknowledges "the district court, in . . . explaining why a non-guideline sentence was justified, did . . . mention the [statutory] factors discussed in this brief." (Appellant's Opening Br. at 21.) We reject Valdez's argument that his sentence is unreasonable because it is significantly greater than the sentences received by his co-defendants. The court explicitly found Valdez was not similarly situated to his co-defendants and our case law instructs that "disparate sentences are allowed where the disparity is explicable by the facts on the record." *United States v. Shaw*, 471 F.3d 1136, 1140 (10th Cir. 2006) (quotations omitted); *see also Gall*, 128 S. Ct. at 600 (noting with approval the district court's consideration of "the need to avoid unwanted *similarities* among [co-defendants] who were not similarly situated"). Valdez's claim that the court erred in ascribing to him a leadership role with respect to the second conspiracy is equally unavailing. In the plea agreement, Valdez stipulated to his leadership role without distinguishing between the first and second conspiracies. He cannot now challenge that stipulation. *See Newman*, 148 F.3d at 878.

We **DENY** Valdez's motions to expand the record on appeal; nothing contained in the requested documents would affect our resolution of this appeal. We also **DENY** Valdez's motion to seal all briefs, appendices and motions in this

appeal.[8]  The decision of the district court is **AFFIRMED.**

ENTERED FOR THE COURT


Terrence L. O'Brien
Circuit Judge

---

[8]  The only matters worthy of being sealed are those contained in the exhibits to Valdez's motion to seal.  These have been sealed and shall so remain.